# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| CHRISTOPHER BROWN, | : | |
|     Plaintiff, | : | CASE NO. 3:17-cv-1427 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ANTONIO SANTIAGO, et al., | : | |
|     Defendants. | : | October 17, 2017 |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff Christopher Brown, previously incarcerated at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, and now incarcerated at a facility in Chesire, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983, asserting claims for deliberate indifference to safety and unconstitutional conditions of confinement. The plaintiff names five defendants: Warden Antonio Santiago, who was the warden at Corrigan "at the times the actions in this complaint took place" (ECF No. 1 at 1), Warden Faucher, who was the warden at Corrigan when the lawsuit was filed, Director of Offender Classification and Population Management David Maiga, District Administrator Edward Maldonado, and Captain Daniel Dauherty, who worked at Corrigan at the relevant times. All defendants are named in individual and official capacities. The complaint was received by the Court on August 23, 2017. The plaintiff's motion to proceed *in forma pauperis* was granted on August 24, 2017. (ECF No. 6.)

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be

granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. Allegations

In August 2016, the plaintiff was acquitted in state court on a charge of assault. Defendant Dauherty testified at the trial. After the plaintiff was found not guilty because he was acting in self-defense, he was returned to Corrigan. Upon his arrival, defendant Dauherty told the plaintiff that he had something special in store for the plaintiff now that he was back at Corrigan. Three days later the plaintiff was assaulted by two Latin King members.

As Director of Offender Classification and Population Management, defendant Maiga is responsible for determining the housing assignments for each inmate and ensuring that the

2

housing assignments are in accord with any separation orders in the inmate's file. Defendant Dauherty is an intelligence officer, in charge of supervising all gang block intelligence.

The plaintiff was assigned to H-pod at Corrigan. The plaintiff was assaulted by two Latin King gang members three days after his arrival at H-pod. (It is not clear whether this alleged assault is different from the one mentioned above.) The plaintiff alleges that he had a documented profile with one of the inmates who attacked him and contends that defendants Santiago and Dauherty arranged his placement in H-pod.

The plaintiff was taken to the restrictive housing unit pending resolution of the disciplinary charge for fighting. A correctional officer who witnessed the assault stated in his incident report that the plaintiff was assaulted by the other inmates and was just defending himself. After the investigation was completed, the disciplinary charge was dismissed. The plaintiff remained in restrictive housing for only one day. Investigating officials also determined that the plaintiff had a separation profile with one of the assailants and should not have been housed in the unit, or even the same correctional facility, as that inmate.

Following the assault, the plaintiff began experiencing headaches and blackouts, sometimes lasting for hours. Although the plaintiff submitted many request forms, he was not seen by a doctor. After threatening legal action, the plaintiff was seen by a doctor on August 6, 2017.

The plaintiff filed a grievance about his assignment to Corrigan. In response, the warden indicated that staff at Corrigan did not become aware that the plaintiff has been involved in an altercation with the other inmate until January 27, 2017. However, the incident occurred on January 12, 2017, and the plaintiff alleges that the necessary information was in the plaintiff's

file. District Administrator Maldonado denied the grievance appeal. The plaintiff also submitted an inmate request seeking transfer to another facility. His request and subsequent grievance were denied. (On September 19, 2017, the Court received a letter from the plaintiff (ECF No. 8) indicating that he had been transferred to Cheshire.)

Each time the plaintiff was sent to restrictive housing he was assigned a cell with an "agitated, hostile, and dangerous" inmate. ECF No. 1, ¶ 46. He had to fight to defend himself from being assaulted by his cellmates.

Inmates in restrictive housing in January 2017 were not provided winter gear to attend recreation, which is held outside. Inmates in general population were permitted to wear their own sneakers, boots, or sweatsuits, to attend recreation. The plaintiff alleges that inmates in restrictive housing are not allowed access to their own clothing and must wear the thin jumpsuit and thin shoes that are provided, but attaches to the complaint a grievance response stating that inmates may wear their own footwear. ECF No. 1 at 64-65. Gloves and hat are not provided.

II. Analysis

The plaintiff argues that the defendants were deliberately indifferent to his safety and subjected him to unconstitutional conditions of confinement. Although he alleges that he was not provided proper medical care for his injuries, the plaintiff has not named any medical providers as defendants.

A. Deliberate Indifference to Safety

Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to

4

his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

The plaintiff first challenges his placement in H-pod at Corrigan. Although he alleges that there was a separation profile in his file to keep him separated from one of the inmates that attacked him, he attaches to his complaint a January 24, 2017 inmate request in which a counselor states that there was no separation profile in place prior to the plaintiff's arrival at Corrigan and notes that the counselor had just entered one. ECF No. 1 at 41. Warden Santiago also responded to a grievance stating that there was no profile entered into the computer regarding the plaintiff prior to his assignment to H-pod. ECF No. 1 at 43. Absent a separation profile, there was no notice to defendants Santiago, Faucher, Maiga or Maldonado that the plaintiff could not be housed in H-pod at Corrigan. The plaintiff attached to the grievance a disciplinary report he received in 2011 for fighting with inmate Torres. The report does not recommend creation of a separation profile. ECF No. 1 at 44-46. The claim for deliberate indifference to safety is dismissed as to defendants Santiago, Faucher, Maiga and Maldonado.

The plaintiff alleges that after his acquittal in state court in August 2016, he was returned to Corrigan. ECF No. 1, ¶ 23. Upon his return to Corrigan, defendant Dauherty promised him "something special" and three days later, he was assaulted by Latin King gang members. ECF No. 1, ¶ 43 (noting two assaults). The plaintiff provides no information regarding the first assault (if it was a separate assault). He does not indicate that the inmates who assaulted him in

5

2017 were the same inmates who assaulted him in 2016, or that the assault was in some way gang-related. Thus, even if defendant Dauherty knew of any prior assault, there are no facts suggesting that he should have known that the second assault would occur. The claim for deliberate indifference to safety is dismissed without prejudice as to defendant Dauherty. The plaintiff may amend his complaint regarding this claim provided he can allege facts demonstrating that the prior assault put defendant Dauherty on notice that the plaintiff was in danger in H-pod.

B.     Conditions of Confinement

The plaintiff also challenges the double-celling of inmates and the lack of winter gear for recreation for inmates in the restrictive housing unit at Corrigan—a claim that is now moot in light of his recent transfer to Chesire. In addition, he challenges his assignment to Corrigan. To state a claim for unconstitutional conditions of confinement, the plaintiff must allege facts suggesting that the conditions under which he is confined deprived him of the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This includes only "adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 510 (1979).

The plaintiff first challenges the practice of double-celling inmates in the restrictive housing unit at Corrigan. Regarding his confinement in restrictive housing following the January 2017 assault, the plaintiff alleges that he was released from restrictive housing after one day and does not allege that his safety was endangered. He does, however, generally allege that he has been held in the restrictive housing unit at Corrigan many times in the past and that "each time

6

[he] had to fight and defend himself from being assaulted by other inmates that was labeled a threat." ECF No. 1, ¶ 46. The plaintiff provides no details regarding these alleges incidents and does not allege that he suffered any injuries.

Requiring violent offenders to share a cell is not unconstitutional. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981) (practice of double-celling alone does not violate Eighth Amendment); *Jones v. Goord*, 190 F.R.D. 103, 108 (S.D.N.Y. 1999) ("Although no court approves of physical violence in the correctional system, the fact is that maximum security prisons house violent offenders, and confrontations between inmates are, to some extent, inevitable despite the best efforts of correction officers and prison officials to prevent them. Such incidents, standing alone, do not necessarily rise to the level of cruel and unusual punishment."). Nor does fear of assault as a result of the failure to adequately screen inmates to ensure compatibility of cellmates rise to the level of a constitutional violation. *See Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998). The plaintiff's conditions of confinement claim based on double-celling in the restrictive housing unit is dismissed.

The plaintiff contends that he was not provided adequate cold weather gear during his confinement in the restrictive housing unit at Corrigan. He alleges that general population inmates are permitted to wear their own shoes and clothing to attend outdoor recreation, but restrictive housing inmate must wear thinner prison jumpsuits and thin prison-issued shoes. Exhibits attached to the complaint show that all inmates are provides coats and are permitted to wear their personal shoes or sneakers, or the prison-issued shoes. ECF NO. 1 at 64-65. Gloves or hats are not provided.

The Second Circuit has held that a prolonged period of exposure to near or well-below

7

freezing temperatures can constitute an Eighth Amendment violation. *See, e.g., Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (near or well-below freezing temperatures in cell for five months). Exposure for a short period, however, does not. *See, e.g., Tyler v. Argo*, No. 14-CV-2049(CM)(DCF), 2014 WL 5374248, at *1, 6 (S.D.N.Y. Oct. 10, 2014) (inmate not provided jacket or coat to walk from housing unit to main building where he had to wait outside for up to twenty minutes failed to state Eighth Amendment claim); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 356-58 (N.D.N.Y. 2010) (prisoner denied winter clothing and sent outside for an hour during recreation in sub-zero temperatures after a shower which caused dreadlocks to freeze and prisoner to suffer head colds and flu insufficient to state Eighth Amendment claim). Here the plaintiff was provided a coat and was outside for, at most, one hour. The Court concludes that the allegations do not state an Eighth Amendment claim.

Because the plaintiff has been transferred to Cheshire, the Eighth Amendment claim based on assignment to Corrigan is dismissed.

III.     Conclusion

The Court enters the following orders:

(1)     The complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     The plaintiff may amend his complaint if he can allege facts demonstrating that defendant Dauherty was deliberately indifferent to his safety. Any amended complaint shall be filed within **thirty (30) days** from the date of this order.

(3)     If the plaintiff fails to timely file an amended complaint, the Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 17th of October 2017 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge